# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**SARA JANE "SALLY" JONES-MCNAMARA,**

    **Plaintiff,**

    v.

**HOLZER HEALTH SYSTEMS, INC.,**

    **Defendant.**

Case No. 2:13-cv-616
JUDGE GREGORY L. FROST
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's motion for judgment on the pleadings (ECF No. 22), Plaintiff's memorandum in opposition (ECF No. 25), and Defendant's reply memorandum (ECF No. 27). The Court **DENIES** the motion.

## I.  Background

According to the pleadings, Plaintiff, Sara Jane Jones-McNamara, began working for Defendant, Holzer Health Systems, in early 2010. Plaintiff was Defendant's Vice President of Corporate Compliance, and as part of her duties she commenced an investigation in May 2010 into allegations that employees were disproportionately using the services of an ambulance company, Life Ambulance, in exchange for gifts and luncheons paid for by Life Ambulance. Plaintiff contends that such behavior violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and that by certifying on Medicaid reports that it was in compliance with the anti-kickback statute, Defendant was submitting false and fraudulent claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.* Plaintiff asserts that various employees of Defendant impeded her investigation. She also asserts that she was in the course of conducting six investigations into compliance issues when Defendant terminated her employment on June 30,

2010.

Plaintiff subsequently filed the instant action. In an amended complaint, she asserts six claims. Count Three of that pleading present a claim for retaliatory discharge under the FCA in violation of 31 U.S.C. § 3730(h). (ECF No. 2 ¶¶ 86-90.) After filing an answer (ECF No. 5), Defendant filed a motion for judgment on the pleadings on that claim (ECF No. 22). The parties have completed briefing on the motion in advance of the default briefing schedule. Accordingly, because the motion is ripe for disposition, the Court will proceed to address the motion prior to the scheduled May 20, 2014 non-oral hearing date.

## II. Discussion

### A. Standard Involved

Defendant seeks judgment on Count Three under Federal Rule of Civil Procedure 12(c), which requires that this Court review the motion in the same manner that the Court would review a motion made under Rule 12(b)(6). *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, 475 (6th Cir. 2008); *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). In order to determine whether Plaintiff has asserted a claim in Count Three upon which this Court can grant relief, the Court must construe Plaintiff's pleading in her favor, accept the factual allegations contained in her pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To be considered plausible, a claim must be more than merely conceivable. *Twombly*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

**B. Analysis**

In order to establish her Count Three claim for retaliatory discharge under the FCA, Plaintiff must show that she engaged in a protected activity, that Defendant knew that Plaintiff engaged in the protected activity, and that Defendant discharged or otherwise discriminated against Plaintiff as a result of the protected activity. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566-67 (6th Cir. 2003). Defendant argues that it is entitled to judgment on Count Three because Plaintiff has failed to allege any facts indicating that she meets the FCA requisites of having acted in furtherance of filing a *qui tam* action or of having been otherwise engaged in activity protected under the FCA while Defendant was on notice of such a fact. Rather, Defendant asserts, the factual allegations indicate only that Plaintiff was performing her duties as a compliance officer. Defendant argues that this set of facts mandates entry of judgment on Count Three under *Yuhasz v. Brush Wellman, Inc.*

In *Yuhasz*, the Sixth Circuit addressed a set of facts in which a plaintiff who was

asserting an FCA retaliation claim had failed to demonstrate that the defendant had been put on notice that the plaintiff was taking action in furtherance of a private qui tam action as opposed to simply warning the defendant of the consequences of its alleged fraudulent conduct. *Id.* at 567. The court of appeals concluded that performing ordinary and expected employment duties of informing an employer that certifications were illegal and might incur liability under the FCA failed to provide the employer with notice of protected activity. *Id.* at 567-68. In reaching this conclusion, the Sixth Circuit phrased the dispositive rule as follows:

> [E]mployees charged with investigating potential fraud are not automatically precluded from bringing a Section 3730(h) action. . . . In light of their ordinary responsibilities, however, such persons "must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations."

*Id.* at 568 (quoting *Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 n.7 (10th Cir. 1996)). At first blush, this would appear to resolve today's dispute over Count Three.

Plaintiff argues that the rationale of *Yuhasz* does not control here, however, because it applies only to a prior version of the FCA. The version of 31 U.S.C. § 3730(h) in effect when the court of appeals issued *Yuhasz* provided in relevant part:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms or conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

*Yuhasz*, 341 F.3d at 566. In May 2009, Congress amended § 3730(h)(1) to read as follows:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful

4

>     acts done by the employee, contractor, or agent on behalf of the employee,
>     contractor, or agent or associated others in furtherance of other efforts to stop 1 or
>     more violations of this subchapter.

Disposition of the Rule 12(c) motion turns on the effect of this amendment, if any.

The pre-May 2009 version of § 3730(h) codified an entitlement to relief for any employee retaliated against for lawful acts done by that employee on behalf of the employee or others in furtherance of an FCA action. The May 2009 amendment codified an entitlement to relief for any employee retaliated against for lawful acts done by that employee "in furtherance of other efforts to stop 1 or more violations" of the FCA. This change is notable.

The post-May 2009 version dropped the FCA action language in favor of language protecting "other efforts" to stop an FCA violation. This effectuated a substantive change in the statute by utilizing broader language, basing the right to relief not only on pursuit or aid of a *qui tam* case, but on *any* conduct by or on behalf of the employee to stop FCA misconduct.

There is no doubt that the May 2009 amendment language was partially in error. In its briefing, Defendant characterizes the amendment as a "momentary glitch in the language of the statute," but that is improperly dismissive of the effect of the amendment. (ECF No. 27, at Page ID # 238.) The amendment includes the language "other efforts," but the use of "other" makes no sense within the context of the rewritten statute. This is because there is no *initial* identification of any protected activity so that what is actually identified in the statute can be *other* efforts. The "other efforts to stop 1 or more violations of this subchapter" suggests a phantom, earlier-identified effort to stop an FCA violation. It is fair enough to label the use of "other" as a glitch, and it became momentary. In July 2010, after Plaintiff lost her job, Congress again amended § 3730(h)(1) to replace "or agent on behalf of the employee, contractor, or agent

5

or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter" with "agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." The 2010 amendment placed back into the statute the previously omitted expression of FCA action so that the statute now provides an initial protected activity (of an FCA action) followed by other protected activities (alternatives to an FCA action). What elevates the 2009 amendment above a "momentary glitch" for present purposes is the effect of the amendment language employed.

Plaintiff argues that the effect of the 2009 amendment is to save her claim. She posits that the amendment rendered inapplicable *Yuhasz*'s requirement that an employer-defendant knew that the employee-plaintiff was a whistleblower who pursued, investigated, or otherwise contributed to a *qui tam* action and that the employer knew it. *See McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 513 (6th Cir. 2000) ("The FCA protects 'whistleblowers' who pursue or investigate or otherwise contribute to a qui tam action, exposing fraud against the United States government."). Rather, Plaintiff contends, her employer only had to know that she was engaged in efforts to stop an FCA violation.

This makes sense. The rationale of *Yuhasz* also made sense for the pre-May 2009 version of the statute. That statutory scheme prohibited retaliation for engaging in protected activity, and the protected activity was bringing or furthering a *qui tam* action. If an employer was unaware of the FCA case aspect and thought that an employee's efforts against an FCA violation were only part and parcel of that employee's job, then the employer cannot be said to have retaliated against the employee for engaging in activity protected under the statute.

From May 2009 until the July 2010 version of the statute, however, the protected activity

was simply engaging in efforts to stop one or more FCA violations.  Nothing in the amended statutory scheme ties this to a *qui tam* action; rather, the statute presents a distinctly broader category of protected activity.  This could apparently take the form of trying to stop the misconduct by external means (*e.g.*, an FCA action) or by internal means (*e.g.*, reporting violations up a company's chain of command in an effort to effectuate institutional course correction).[1]  As long as the employer knew about the efforts, a plaintiff fell within the scope of the statutory scheme's protections.

    This interpretation means that *Yuhasz*'s description of the elements of an FCA retaliatory discharge claim remain correct: a plaintiff must show that she engaged in a protected activity, that her employer knew that she engaged in the protected activity, and that the employer discharged or otherwise discriminated against her as a result of the protected activity.  What does not remain correct in regard to the May 2009 version of the statutory scheme is *Yuhasz*'s requirement that the employer knew that the employee was doing more than her job by bringing or furthering an FCA case.  To conclude otherwise would be to impose on the May 2009 amendment restrictions that are simply not there.  It would be to ignore evidence of the intent of Congress to afford greater protections to individuals who are attempting to stop violations of the law.

---

[1] Plaintiff suggest in her memorandum in opposition that "[t]he 2009 version of the Section eliminated protection for filing a *qui tam* lawsuit: this was an oversight on the part of Congress." (ECF No. 25, at Page ID # 223.)  This conclusion is of course not the precise issue before this Court.  Regardless, although the 2009 amendment eliminated an express reference to a *qui tam* action, it is logical to conclude that a *qui tam* action is an implicit subset of the expressed protected activity (*i.e.*, efforts to stop one or more FCA violations).  This interpretation might render the 2010 amendment partially redundant; in any event, the re-insertion of FCA actions simply resolves any ambiguity.

This Court's interpretation of the May 2009 amended version of § 3730(h)–which, by logical extension, informs the 2010 version as well, which simply made express what the 2009 version implied–finds support in persuasive authority. The Seventh Circuit has explained:

> Section 3730(h)(1) protects two categories of conduct. The statute has long prevented employers from terminating employment for conduct that is "in furtherance of an action under this section." In *Brandon* [*v. Anesthesia & Pain Management Associates, Ltd.*], we explained that this language reached conduct that put an employer "on notice of potential [False Claims Act] litigation." 277 F.3d at 945. In 2009, Congress amended the statute to protect employees from being fired for undertaking "other efforts to stop" violations of the Act, such as reporting suspected misconduct to internal supervisors.

*Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 847-48 (7th Cir. 2012). Such recognition of the expanded scope of § 3730(h)(1) supports recognizing a necessarily limited application of *Yuhasz*.

Defendant nonetheless argues that those employees working in "fraud alert" positions still have a heightened notice requirement to their employers. Thus, Defendant reasons, Plaintiff's simply doing her job as a compliance officer is not enough. But what Defendant overlooks is that even courts that have applied the objective "distinct possibility" standard to determine whether an employee has engaged in protected activity still distinguish between mere expressions of concerns and suggestions over FCA violations and threats or warnings of FCA litigation.

For example, in *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, a district court judge outside this Circuit recently applied the distinct possibility standard in addressing an FCA retaliation claim. No. 3:11-CV-38, 2014 WL 1493568, at *13 (Apr. 14, 2014). That judicial officer asked whether the plaintiff "was investigating matters that reasonably could lead to a viable FCA action" and noted that "[t]here is little that shows that any

8

Defendant would have reasonably believed that [the plaintiff] was acting in furtherance of an FCA action or *a related internal report*." *Id.* (internal quotation remarks omitted; emphasis added.)  Because the district judge found that "[t]here is no indication that [the plaintiff] approached his employer about concerns related to the alleged fraud against the federal government or even the . . . law violations that he now uses to support his FCA claims," the judge concluded that the plaintiff's retaliation claim failed.  *Id.*

      That is not the scenario here.  The relevant takeaway from *Yuhasz* remains the need for notice of the protected activity to the employer.  Necessarily crediting all of the factual allegations of the pleadings in Plaintiff's favor, this Court concludes that there is factual support for the proposition that Defendant was on notice that Plaintiff was engaged in protected conduct regardless of whether she was considering or furthering a *qui tam* action.  Plaintiff was investigating conduct that related to improper, fraudulent reporting, had sent a memorandum complaining of conduct that she indicated needed to be banned, and, perhaps most notably, had advised that reimbursement checks needed to be sent to the government.  Allegedly in response, Plaintiff was purportedly instructed not to talk to her informant again, not to reduce her findings and analyses to writing, and not to work with anyone in her investigations except for outside counsel to create the appearance that the attorney-client privilege covered any materials involved in the work.  These alleged facts reasonably suggest that Defendant knew that Plaintiff was involved in creating internal reports concerning FCA issues, that Plaintiff had approached her employer on these issues, that Plaintiff thought that Defendant had defrauded the government and owed reimbursement, and that Defendant appreciated that the investigatory matters reasonably could lead to a viable FCA action so as to attempt to establish privilege.  Under these

9

facts and assuming *arguendo* that the distinct possibility standard applies, it is easy to conclude that Defendant would have reasonably believed that there was a distinct possibility of litigation under the FCA.  *See Marbury v. Talladega Coll.*, No. 1:11-cv-03251-JEO, 2014 WL 234667, at *7- 10 (N.D. Ala. Jan. 22, 2014).

Judgment on the pleadings on Count Three is not warranted.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion  for judgment on the pleadings.  (ECF No. 22.)  Because this denial **MOOTS** Defendant's motion to stay discovery and/or for a protective order, which sought to preclude discovery until disposition of the Rule 12(c) motion, the Clerk shall also terminate that motion on the docket.  (ECF No. 24.)

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE