# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

SARA JANE "SALLY" JONES-MCNAMARA,

      Plaintiff,

                            Case No. 2:13-cv-616

v.                           JUDGE GREGORY L. FROST
                            Magistrate Judge Terence P. Kemp

HOLZER HEALTH SYSTEMS, INC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) Defendant's September 15, 2014 motion to strike Plaintiff's errata sheet (ECF No. 75), Plaintiff's memorandum in opposition (ECF No. 91), and Defendant's reply memorandum (ECF No. 97); and

(2) Defendant's October 22, 2014 motion to strike Plaintiff's errata sheet (ECF No. 111), Plaintiff's memorandum in opposition (ECF No. 115), and Defendant's reply memorandum (ECF No. 117).

For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motions to strike. (ECF Nos. 75, 111.)

## I.  Background

On June 25, 2014, counsel for Defendant, Holzer Health Systems, took the deposition of Plaintiff, Sara Jane Jones-McNamara. Shortly before that deposition ended, counsel for the respective parties engaged in a discussion regarding whether Defendant could ask additional questions. Defendant's counsel would not permit Plaintiff's counsel to inquire of Plaintiff until Defendant's counsel has concluded his questioning of Plaintiff. This led to the following

exchange:

>    [Defendant's counsel]: So at this time, I'm going to hold open the remainder of the deposition pending approval of Magistrate Kemp.
>
>    [Plaintiff's counsel]: You're right.  I have two choices now.  I can either do my cross or we can – we can waive the cross in exchange for just introducing whatever needs to be clarified through affidavit.
>
>    And would you allow me to do cross on what has been done in the direct so far?
>
>    [Defendant's counsel]: Not at this time.  Not until I'm done with my direct.
>
>    [Plaintiff's counsel]: Then I – we reserve the right to introduce anything – any clarifying information via affidavit.
>
>    [Defendant's counsel]: That's fine.

(ECF No. 91-1, at Page ID # 4385-86.)  The June 25, 2014 deposition of Plaintiff then concluded.

On August 29, 2014, Plaintiff sat for a second deposition.  In contrast to the first deposition, this second deposition apparently concluded without any exchange regarding a clarifying affidavit.

Thereafter, Plaintiff submitted an August 10, 2014 errata sheet to her first deposition transcript in which she indicated that she was making 71 "corrections and clarifications to that transcript and to my testimony pursuant to Fed. R. Civ. P. 30(e)."  (ECF No. 75-1, at Page ID # 3682.)  Defendant subsequently filed its motion for summary judgment on September 15, 2014.  (ECF No. 73.)  On that same day, Defendant filed a motion to strike the errata sheet (ECF No. 75) and Plaintiff filed her own motion for partial summary judgment (ECF No. 84).

Plaintiff later submitted an October 8, 2014 errata sheet to her second deposition transcript in which she  indicated that she was making 34 "corrections and clarifications to that

transcript and to my testimony pursuant to Fed. R. Civ. P. 30(e)." (ECF No. 111-1, at Page ID # 5331.) On October 22, 2014, Defendant filed a motion to strike this second errata sheet. (ECF No. 111.) Summary judgment briefing closed several days later. The parties have completed briefing on the motions to strike, both of which are ripe for disposition.

## II. Discussion

### A. Standard Involved

Defendant states in its motions that it is moving to strike the errata sheets pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 75, at Page ID # 3674; ECF No. 111, at Page ID # 5328.) Reliance on this rule is erroneous, given that the rule permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) is thus confined on its face to pleadings. *See* Fed. R. Civ. P. 7(a) (identifying pleadings as a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a court-ordered reply to an answer). Defendant therefore cannot use Rule 12(f) to strike the errata sheets. *See Mullins v. Cyranek*, No. 1:12CV384, 2014 WL 3573498, at *2 (S.D. Ohio July 21, 2014).

Just as in *Mullins*, however, this Court can consider Defendants' motions as "invitation[s] to disregard the changes to the errata sheet[s] in ruling on summary judgment." *Id.* This invokes Federal Rule of Civil Procedure 30(e), which provides that

> the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which;
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes in form or substance, to sign a statement listing the changes

3

and the reasons for making them.

Fed. R. Civ. P. 30(e)(1).

### B. Analysis

The parties disagree over the correct interpretation and application of Rule 30(e)(1) in this context. This Court agrees with the understanding of the rule explained by another judicial officer in this District, who stated in *Mullins*:

> The Sixth Circuit has interpreted Rule 30(e) to prohibit " 'one to alter what was said under oath.' " *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565 (6th Cir. 2009) (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06–cv–581, 2008 U.S. Dist. LEXIS 12307, 2008 WL 343178 (S.D. Ohio Feb. 7, 2008)). *Accord: A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 702–03 (6th Cir. 2013) ("[A] party moving for summary judgment cannot extinguish a genuine issue of material fact simply by filing an errata sheet and affidavit to counteract the effect of previous deposition testimony."). If it were the case that what was said under oath could be altered in an errata sheet, "one could merely answer the questions with no thought at all[,] then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Trout*, 339 F. App'x at 565 (quoting *Tuttle*, 2008 U.S. Dist. LEXIS 12307, 2008 WL 343178). This is a restrictive approach to Rule 30(e), and district courts inside and outside the Sixth Circuit have recognized that "the Sixth Circuit is apparently the '[o]ne court of appeals [that] permits a deponent to correct only typographic and transcription errors.' " *Walker v. 9912 East Grand River Assocs., LP*, No. 11–12085, 2012 U.S. Dist. LEXIS 46887, at *8, 2012 WL 1110005 (E.D. Mich. Apr. 3, 2012) (quoting *Devon Energy Corp. v. Westacott*, No. H–09–1689, 2011 U.S. Dist. LEXIS 30786, 2011 WL 1157334 (S.D. Tex. Mar. 24, 2011)). Those courts applying *Trout* thus have disregarded errata sheets when they attempt to make more significant alternations, even for the purpose of clarifying. *Clare v. Chrysler Group, LLC*, No. 13–11225, 2014 U.S. Dist. LEXIS 75873, at *7, 2014 WL 2515212 (E.D. Mich. June 4, 2014) (striking changes to errata sheet under *Trout* and less restrictive approach); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11–374, 2014 U.S. Dist. LEXIS 59689, at *12, 2014 WL 1744848 (E.D. Ky. Apr. 30, 2014) (striking changes to errata sheet under *Trout* because they substantively changed answers provided at the deposition); *Giebel v. Lavalley*, No. 5:12–cv–750, 2013 U.S. Dist. LEXIS 181887, at *13, 2013 WL 6903784 (N.D. Ohio Dec. 31, 2013) (striking errata sheet changes provided for "clarification" "[i]nformation recalled after [the] deposition," "[to] correct [a] misstatement," and "[to] correct grammar" as improper); *CNB Bancshares, Inc. v. StoneCastle Secs., LLC*, No. 3:09–cv–33, 2012 U.S. Dist. LEXIS 97541, 2012 WL 2887256 (E.D.

Tenn. July 13, 2012) (rejecting changes to errata sheet that contradicted deposition testimony).

*Mullins*, 2014 WL 3573498, at *2.  *See also Clare v. Chrysler Group, LLC*, No. 13-11225, 2014 WL 2515212, at *1 (E.D. Mich. June 4, 2014) (similarly construing *Trout*); *Taylor v. W. Tenn. State Penitentiary*, No. 2:11-cv-02843-cgc, 2014 WL 2036048, at *1-2 (W.D. Tenn. May 16, 2014) (same).  This is the standard that governs the motions *sub judice*.

Plaintiff argues that striking any of the errata sheet content under this  restrictive standard would mean that the Court has permitted Defendant to renege on the agreement reached at the end of the June 25, 2014 deposition to permit Plaintiff to introduce any clarifying information via affidavit.  Four comments are necessary.

First, it is uncertain whether the parties's agreement to permit a post-deposition "clarifying affidavit" can even constitute a permissible agreement.  It is well settled that a party cannot create a factual issue by filing an affidavit that contradicts earlier deposition testimony. The parties' agreement here potentially opens the door to such impermissible action, which would invalidate acceptance of such impermissible results of the agreement.

Second, even assuming that such an agreement were proper, Plaintiff ultimately failed to act in accordance with the agreement.  She never submitted an affidavit, which undercuts Plaintiff's contention that Defendant is reneging on the agreement .  Instead, what Plaintiff submitted were errata sheets that Plaintiff expressly stated were being submitted pursuant to Rule 30(e).  Thus, even if there were an agreement to permit the alteration of deposition testimony by subsequent affidavit, Plaintiff did not follow that procedure and cannot now cloak herself in an abandoned agreement.

Third, even if it were to consider the errata sheets to be affidavits, this Court cannot say

5

that most of the proposed changes constitute clarifications as opposed to wholesale substantive changes. Defendant argues that there was no meeting of the minds so as to form the agreement that Plaintiff insists counsel formed. Rather, Defendant insists that its counsel agreed only to the submission of a clarifying affidavit, with the understanding that such an affidavit would make Plaintiff's testimony easier to understand. There is a substantial difference between remedying confusing errors in transcription and changing answers.

Fourth, the agreement between counsel permitting the filing of an affidavit was reached only at the end of the first deposition session and applied only to the transcript of that June 25, 2014 deposition. Plaintiff has not directed this Court to anything in the record supporting the proposition that the agreement also permitted or even contemplated a clarifying affidavit for the August 29, 2014 second deposition. Therefore, even if this Court is incorrect as to its treatment of the agreement as to the first deposition errata sheet, Plaintiff's October 8, 2014 errata sheet to her second deposition falls outside the agreement made by counsel and thus remains solely within the standards of Rule 30(e).

This leaves only application of Rule 30(e) to the errata sheets. Another judicial officer in this Circuit has explained how the holding of *Trout* affected an errata sheet that presented significant changes under the guise of clarifications:

> The majority of the changes Dr. Liva requests in his errata sheet are on grounds of "clarification." That "clarification" often consists of the addition of whole sentences—sometimes even entire paragraphs—of testimony. This "take home test" approach is simply not proper in the Sixth Circuit. It is irrelevant whether the additional testimony is consistent or inconsistent with prior testimony: the only acceptable changes are those that correct either typographical or transcription errors. As a result, Dr. Liva's proposed changes for reasons of "clarification," "[information] recalled after [the] deposition," "[to] correct [a] misstatement," and "[to] correct grammar" are improper and must be stricken.

6

*Giebel v. Lavalley*, No. 5:12-cv-750, 2013 WL 6903784, at *4 (N.D. Ohio Dec. 31, 2013). Similarly applying the standard of *Trout*, this Court also rejects those changes that do not simply correct typographical or transcription errors.  Given the rather remarkable nature of almost all of the changes Plaintiff submitted on her errata sheets, the Court must strike most of her changes.

There is a caveat to the disposition of the motions to strike.  A chart attached to Defendant's first motion and its memorandum in support includes some changes Plaintiff has made but not others, which perhaps suggests that Defendant does not object to select changes. The briefing on the first errata sheet suggests, however, that Defendant is possibly asking this Court to strike the entirety of the first errata sheet.  In contrast, Defendant's second motion is more clear in that it expressly indicates that Defendant is asking the Court to strike only specific changes.  Accordingly, this Court will treat the September 15, 2014 motion as targeting the entirety of Plaintiff's first errata sheet and the October 22, 2014 motion as targeting only portions of Plaintiff's second errata sheet.  This Court mentions the distinction to explain the treatment of the motions in the Conclusion in which the Court grants in part and denies in part the motions.  This disposition of the second motion reflects that the Court rejects Defendant's agreement to or implicit request that the Court accept some of the changes that application of *Trout* would reject.  In other words, once Defendant opens the door to review of the errata sheets, this Court will not let Defendant pick and choose which changes undergo scrutiny.  This guards against the chance that Defendant might want to rely on a change that helps its case while using the rationale that would invalidate defeat that change to attack a change that does not help Defendant.  The Court has reviewed every errata sheet change under the *Trout* standard.

The following chart summarizes the first errata sheet and this Court's decisions:

| | | **August 10, 2014 Errata Sheet to June 25, 2014 Deposition** | | |
|---|---|---|---|---|
| **Change No.** | **Tr. Lines** | **Original** | **Change** | **Decision** |
| 1 | 18:24 - 19:1 | "difficulty in the sunshine–I was working in a sunshine protec–sunshine position payment project, and" | "difficulty with the Physician Payment Sunshine Act.  I was Project Manager for that major project, and" | Stricken. |
| 2 | 24:12-17 | | explanation: "This is why I returned to Ohio, not why I did not sue CareFusion.  See 26:9-13 for why I did not sue CareFusion." | Stricken. |
| 3 | 25:2 | "$80 million" | "$40 million" | Stricken. |
| 4 | 32:8 | "That's correct." | "That's correct for state licensure and national certification renewal of my Certificate of Clinical Competence in Speech-Language Pathology." | Stricken. |
| 5 | 32:11 | "Yes.  Uh-huh." | "Yes.  I received my CCE, that is, my Certified Compliance Executive Certification in February 2009." | Stricken. |

8

| 6 | 34:8-15 | | replace answer with: "Compliance professionals who wish to maintain their certification must complete certain requirements and obtain forty points in specified areas.  Twenty-four of these points may be obtained through work experience and through courses offered by the Council of Ethical Organizations or the Health Ethics Trust.  Work experience may total eight points, documented by a written summary of the work experience demonstrating a continuing responsibility for compliance and/or ethics program development or management; demonstrating a related work product to which one has made a substantial contribution (such as policies and procedures, code of conduct, training materials).  Continuing Education may total sixteen points.  This requires the completion of course work.  The additional sixteen points may be earned through Continuing Education from other organizations. Agendas and course materials must be submitted; completion is required; and the credentials of the instructors must be provided.  Alternatively, Compliance Community involvement may be demonstrated, such as teaching or presenting." | Stricken. |

| 7 | 35:6 | "If you meet the other seven elements." | "If one meets the other requirements." | Stricken. |
|---|---|---|---|---|
| 8 | 41:3 | | delete: "I have not been certified since I got certified." | Stricken. |
| 9 | 48:15 | "I believe it was in 2008. No. That's not right. 2006 probably." | "about 2000" | Stricken. |
| 10 | 54:7 | "or" | "of" | Accepted. |
| 11 | 56:11-18 | "2006 or 2008" | "about 2000" | Stricken. |
| 12 | 57:2-3 | "2006 or 2008" | "about 2000" | Stricken. |
| 13 | 59:7-8 | | delete: "You do need it for the recertification for a CCP" | Stricken. |
| 14 | 59:21-22 | | replace answer with: "I am not in the process of recertification but may be submitting an application for recertification within the next two years." | Stricken. |
| 15 | 62:19 | "At our mediation." | "After I resigned and at our mediation." | Stricken. |
| 16 | 62:22-23 | "I don't recall the exact date, but if that's what I said." | "The suit was filed against me in 2000." | Stricken. |
| 17 | 97:20 | "I believe it to be" | "I believe it to be with the exception of the handwriting on the last page and the box on the first page appearing after the words 'can make it work' " | Stricken. |
| 18 | 110:18-19 | "It was December 16th or 18th of '09." | "It was December 31, 2009." | Stricken. |

| 19 | 112:13 | "You are correct." | "Nothing on this document states that I was terminated, but I as I've explained it indicates that I was terminated."[1] | Stricken. |
|---|---|---|---|---|
| 20 | 121:1 | "Youth Solutions" | "U Solutions" | Accepted. |
| 21 | 142:14 | "Yes." | "Yes, for compliance issues." | Stricken. |
| 22 | 149:16 | "I was an employee" | "I was an employee of Holzer Consolidated Health System" | Stricken. |
| 23 | 154:7 | "If there is a period" | "If there is a period before you can transfer" | Stricken. |
| 24 | 155:9 | "Yes." | "Yes, for compliance issues." | Stricken. |
| 25 | 174:19 | | delete: "and he" | Stricken. |
| 26 | 177:5 | "I did." | "I did, to the point that I could reach a conclusion that a violation had occurred." | Stricken. |
| 27 | 177:7 | "I did." | "I did, to the point that I could reach a conclusion that a violation had occurred." | Stricken. |
| 28 | 194:21-22 | | delete: "of calling it–called in re:" | Stricken. |
| 29 | 204:9 | "the audit" | "audits" | Stricken. |
| 30 | 211:24 | "thing" | "schedule" | Stricken. |
| 31 | 213:6 | "area" | "error" | Accepted. |
| 32 | 221:24 | "hay" | "haste" | Stricken. |
| 33 | 222:4 | "thorough" | "though" | Accepted. |
| 34 | 227:12 | "Well, no." | "Yes, if there was kickback violation." | Stricken. |
| 35 | 233:20 | "E&–" | "E&M" | Accepted. |

---

[1] The Court assumes that the second "I" is a scrivener's error and that Plaintiff intended the change to read as follows: "Nothing on this document states that I was terminated, but as I've explained it indicates that I was terminated."

| 36 | 234:15-16 | "Right there in that one investigation I had done." | "For the one inquiry I had done, but I had not yet finished that investigation." | Stricken. |
|---|---|---|---|---|
| 37 | 248:20 | "contin–" | "continuing" | Accepted. |
| 38 | 252:7 | | delete: "as was Mr." | Stricken. |
| 39 | 253:12 | "done" | "said" | Stricken. |
| 40 | 261:4 | | delete: "count" | Stricken. |
| 41 | 267:10 | "require" | "recall" | Stricken. |
| 42 | 281:14 | | delete: "don't" | Stricken. |
| 43 | 286:20 | "are" | "were" | Stricken. |
| 44 | 286:21 | | delete: "in Jack–" | Stricken. |
| 45 | 293:12 | "progress" | "privacy" | Stricken. |
| 46 | 293:17-19 | | add: "Employees with compliance concerns don't come to talk to the compliance officer at her office.  Employees fear retaliation, and fear being seen there.  Often, we make arrangements to meet outside the hospital." | Stricken. |
| 47 | 294:9 | "they" | "I" | Stricken. |
| 48 | 294:15 | "'cause" | "because" | Accepted. |
| 49 | 302:3 | "Oh–" | "No" | Stricken. |
| 50 | 302:5 | "–Please" | "No" | Stricken. |
| 51 | 303:6 | "yes" | "no" | Stricken. |
| 52 | 310:6 | "We–" | "We talked about the need for including and reviewing the four statements that I had provided to Lisa, that employees would be evaluated regarding their compliance with the compliance program in New Employee Orientation right away, including the Code of Conduct." | Stricken. |

12

| 53 | 310:7 | "she" | "Lisa" | Stricken. |
|---|---|---|---|---|
| 54 | 310:18-19 | "get–not the Code of Conduct out, because we needed to–I had to write one and get it out" | "not get out the Code of Conduct and the four statements, because we need to. I had to write a Code and get it out." | Stricken. |
| 55 | 311:3 | "So if we started this at the New Employee Orientation and we just had now these are the things you will be–after you're trained in compliance, these are the things that on your next year's evaluation you will be evaluated on, that's what needed to start quickly, and she agree to that." | "So if we started this at the New Employee Orientation, these are the things that you would be evaluated on, with regard to your complying with out compliance program. That's what we needed to start quickly, and she had agreed to that." | Stricken. |
| 56 | 311:13 | "by–It would seem too–too long." | "By then. It would seem way to [sic] long." | Stricken. |
| 57 | 313:11 | "catch–" | "catch up" | Stricken. |
| 58 | 314:18-19 | "compliance and annual" | "compliance, new employee orientation, and annual." | Stricken. |
| 59 | 317:9-10 | "Probably. I hope not at work, but I probably did." | "I remember calling her a bitch once, in an email that I sent to Mark Pastin right after I was fired, when I was very angry, I did not call her a bitch at work." | Stricken. |
| 60 | 318:2 | "someone" | "superior" | Stricken. |
| 61 | 318:2-3 | | delete: "or a peer" | Stricken. |
| 62 | 318:6 | "those" | "these" | Stricken. |
| 63 | 319:24 | "those to" | "those gratuities to" | Stricken. |
| 64 | 325:2 | "Yes, I did." | "Yes, I did, for the reasons I've explained earlier." | Stricken. |

| 65 | 330:10 | "The employment contract was the letter that I signed with Jim Phillie, and the charter passed by the board, and the roles and responsibilities, as well as the policies and procedures manual." | "The employment contract was the offer letter that I signed with Jim Phillippe, and the job description for my position." | Stricken. |
|---|---|---|---|---|
| 66 | 332:4-6 | | add: "However, it does not amend my contract, and my contract did not provide for any probation period." | Stricken. |
| 67 | 332:9 | "Yes." | "Yes, to the extent that it does not change my contract, including not adding a probation period." | Stricken. |
| 68 | 335:4 | "She" | "He" | Stricken. |
| 69 | 337:5-6 | "and then them or they, the Audit Committee" | "and then let them, the Audit Committee" | Stricken. |
| 70 | 337:11 | "Again, reiterated." | "Again, Brent Saunders reiterated." | Stricken. |
| 71 | 347:14 | "Yes." | "Yes, to the point that I could reach a conclusion that a violation had occurred." | Stricken. |

Plaintiff argues that the second errata sheet is moot because none of the summary judgment briefing relies upon any change found on that sheet. Plaintiff then suggests that Defendant could refile a motion to strike the second errata sheet changes if they become relevant at some subsequent stage of this litigation. It is unclear to this Court whether Plaintiff's representations regarding the summary judgment briefing are correct; the Court has not been able to reach those motions yet due to the need to address first the various ancillary motions the parties have filed. But it makes little sense to this Court to make the parties re-brief the second errata sheet changes if they should become relevant when the parties have already fully briefed

14

the issues.  This Court will therefore address the second errata sheet changes now given the possibility that they may be relevant if this case proceeds to a trial.

The following chart summarizes the second errata sheet and this Court's decisions:

| October 8, 2014 Errata Sheet to August 29, 2014 Deposition | | | | |
|---|---|---|---|---|
| **Change No.** | **Tr. Lines** | **Original** | **Change** | **Decision** |
| **1** | 14:11-12 | "It's that consulting – compliance consulting and he is in . . ." | Replace ". . ." with "Strategic Management" | Stricken. |
| **2** | 25:6 | "I'm always truthful." | "I always try to be truthful." | Stricken. |
| **3** | 31:6 | "Yes." | "That statement is incorrect." | Stricken. |
| **4** | 34:11 | "Probably, yes." | "I do not know the answer to that.  My hope was that he probably could have done so." | Stricken. |
| **5** | 50:18 | | add: "Also, I was busy caring for family members." | Stricken. |
| **6** | 53:24-54:1 | "that was sent to the board that was a board report" | "that was to be sent to the Board" | Stricken. |
| **7** | 56:8 | "He" | "She" | Accepted. |
| **8** | 60:15 | | add: "and give them written material" | Stricken. |
| **9** | 67:1 | "Yes." | "Yes, in other areas." | Stricken. |
| **10** | 67:10 | | add: "and possibly the Urgent Care Center" | Stricken. |
| **11** | 69:15 | | add: "before I was fired" | Stricken. |
| **12** | 73:7 | "about—" | replace "—" with "appropriate as opposed to inappropriate codes" | Stricken. |

| 13 | 73:15-16 | "medical director to the Jackson Hospital" | "Medical Director to the System" | Stricken. |
| 14 | 76:4 | "Yes." | "No.  I spoke with Kelly Mayo and a person named Alice about upcoding concerns." | Stricken. |
| 15 | 78:10 | "next and will speak" | "next and I will speak" | Accepted. |
| 16 | 78:11 | | add: "I also discussed this with the Director of Quality and asked to be invited to the Sr. Medical Staff meetings to provide education." | Stricken. |
| 17 | 79:12 | "director of – she" | "Director of Quality, April McLain, and the Director of Health Information Management, Chella Price.  They" | Stricken. |
| 18 | 79:14 | "she" | "Chella Price" | Stricken. |
| 19 | 90:4-5 | "Brick Venicular" | "Bricker & Eckler" | Accepted. |
| 20 | 102:5 | "Wes Porter Care Fusion" | "Wes Porter at Care Fusion" | Stricken. |
| 21 | 105:16 | "thing" | "things" | Accepted. |
| 22 | 106:7 | "him" | "this" | Stricken. |
| 23 | 106:11 | "Gwyneth" | "Glenda" | Stricken. |
| 24 | 110:20-21 | "Monument 401" | "Bonnie McFarlane" | Stricken. |
| 25 | 112:7 | "and" | "to" | Stricken. |
| 26 | 112:22 | | Delete "in another case" | Stricken. |
| 27 | 113:15-16 | "was present at doctor – the ER doctor's name was – 23.50, I believe" | "was present at Dr. Mackunas' deposition.  It was $23.50, I believe." | Stricken. |
| 28 | 114:15 | "many – I needed to know.  I needed to know the – whether MAC would have us extrapolate" | "many years this had been going on.  I needed to know whether MAC would have us extrapolate" | Stricken. |
| 29 | 115:16 | | add: "of the type of the one that I saw" | Stricken. |
| 30 | 118:7 | "scheming" | "skewing" | Stricken. |

| 31 | 118:11 | "Hizer (phonetic)" | "Heizer" | Accepted. |
| 32 | 119:4 | "thing" | "schedule" | Stricken. |
| 33 | 121:3 | "McLean" | "McLain" | Accepted. |
| 34 | 124:17 | "Immediately after this–I got this call." | "Immediately after I got this hotline call." | Stricken. |

### III.  Conclusion

The Court **GRANTS IN PART and DENIES IN PART** Defendant's motions to strike

as described herein.  (ECF Nos. 75, 111.)

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

17