UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SARA JANE "SALLY" JONES-MCNAMARA,

      Plaintiff,

                                 Case No. 2:13-cv-616
   v.                        JUDGE GREGORY L. FROST
                                 Magistrate Judge Terence P. Kemp

HOLZER HEALTH SYSTEMS, INC.,

      Defendant.

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Defendant's motion for summary judgment (ECF No. 73), Plaintiff's memorandum in opposition (ECF No. 109), and Defendant's reply memorandum (ECF No. 112); and

(2) Plaintiff's motion for partial summary judgment (ECF No. 84), Defendant's memorandum in opposition (ECF No. 96), and Plaintiff's reply memorandum (ECF No. 113).

For the reasons that follow, this Court **GRANTS** Defendant's motion for summary judgment on Count Three (ECF No. 73) and **DENIES** Plaintiff's motion for partial summary judgment (ECF No. 84). The Court also dismisses without prejudice Plaintiff's state law claims.

## I. Background

Plaintiff, Sara Jane Jones-McNamara, began working for Defendant, Holzer Health Systems, in early 2010. Plaintiff was Defendant's Vice President of Corporate Compliance, and as part of her duties she commenced an investigation in May 2010 into allegations that employees were disproportionately using the services of an ambulance company, Life Ambulance, in exchange for one or more gifts and luncheons paid for by Life Ambulance. Plaintiff contends that such behavior violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-

7b(b), and that by certifying on Medicaid reports that it was in compliance with the anti-kickback statute, Defendant was submitting false and fraudulent claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*  Plaintiff asserts that various employees of Defendant impeded her investigation.  She also asserts that she was in the course of conducting multiple investigations into compliance issues when Defendant terminated her employment on June 30, 2010.

Plaintiff subsequently filed the instant action in which she asserts six claims.  Both sides have filed competing motions for summary judgment.  (ECF Nos. 73, 84.)  The parties have completed briefing on the motions, which are ripe for disposition.

## II.  Discussion

### A.  Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A

2

genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B.  Analysis

#### 1.  Federal Claim

Count Three of Plaintiff's amended complaint presents her sole federal claim, a claim for retaliatory discharge under the Federal False Claims Act ("FCA") in violation of 31 U.S.C. § 3730(h).  (ECF No. 2 ¶¶ 86-90.)  In order to establish retaliatory discharge, Plaintiff must show that she engaged in a protected activity, that Defendant knew that Plaintiff engaged in the protected activity, and that Defendant discharged or otherwise discriminated against Plaintiff as a result of the protected activity.  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566-67 (6th Cir. 2003).  Defendant argues that it is entitled to summary judgment on Count Three because Plaintiff cannot establish any of these three prongs.

Assuming *arguendo* that Plaintiff can establish the first two elements of her retaliatory discharge claim, this Court concludes that the claim nonetheless fails because Plaintiff cannot establish that Defendant discharged or otherwise discriminated against her as a result of the protected activity.  Plaintiff disagrees, asserting that both direct and indirect evidence of retaliation exists.

The Sixth Circuit has explained that " '[d]irect evidence is that evidence which, if

3

believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Foster v. Michigan*, 573 F. App'x 377, 393 (6th Cir. 2014) (quoting *Jacklyn v. Schering-Plough Healthcare Products Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  In other words, "[d]irect evidence 'does not require a factfinder to draw any inferences.' " *Id.* (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)).  Once a plaintiff produces direct evidence, "the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).  *See also Jacklyn*, 176 F.3d at 926.

For such direct evidence of discrimination, Plaintiff first relies on the testimony of Holzer Executive Vice President James Phillippe, who testified that prior to Plaintiff's termination, he and Holzer Chief Executive Officer Brent Saunders had discussed the factors that led to Plaintiff's termination.  Phillippe testified that among the concerns they discussed, "[t]here had been a couple issues where I'm not sure we were in total agreement with [Plaintiff's] point of view."  (ECF No. 74-1, at Page ID # 3378.)  Phillippe explained that this included whether the provision of hot dogs by Life Ambulance at an employee function was improper.  He also testified that he "would say that it was probably an issue between Mr. Saunders and [Plaintiff]."  (*Id.* at Page ID # 3384.)  When Plaintiff's counsel asked how Phillippe knew that, however, Phillippe answered, "I don't.  I'm speculating."  (*Id.*)  Finally, Phillippe testified as follows:

> Q.     Thank you.
>
>          We were talking about Mrs. McNamara.  Why was she terminated?
>
> A.     Well, I didn't make that decision.  You know, I know what I was told, but again, that's – it wasn't me that made that decision.
>
> Q.     What were you told?

A.      That it was a number of issues, some of which were pursuing things that maybe weren't that big an issue and there were maybe bigger issues that could have been dealt with.

I remember having been told that here was concern that she was publishing her opinions before she had completed investigations. And I remember Brent saying she hadn't gotten his name right even and maybe that just made him question her accuracy, I guess.

(*Id.* at Page ID # 3392.)  All of the foregoing testimony leads to two conclusions.

One conclusion is that none of the targeted testimony constitutes direct evidence of retaliation.  The testimony does not say, for example, that Defendant fired Plaintiff because she had *uncovered* an anti-kickback violation.  Nor does it say that Defendant fired Plaintiff because she was *investigating* a possible anti-kickback violation and Defendant wanted to stop the investigation.  Rather, the testimony presents speculation as to why Saunders made the decision to terminate Plaintiff, some of which requires an inferential leap to suggest a retaliatory animus.  One possible inference is that Defendant fired Plaintiff because she was looking into a possible violation.  Another possible inference is that Defendant fired Plaintiff because the corporate decisionmaker believed that Plaintiff was wasting her time on nonsense when real investigation of other matters were necessary.  The involvement of an inference leads to an indirect evidence analysis and not the direct evidence analysis Plaintiff advocates.

The second conclusion in need of mention is that the cited testimony also expressly supports several of the non-retaliatory reasons that Defendant asserts constituted the basis for Plaintiff's discharge (*i.e.*, prematurely publishing opinions and questionable accuracy reflected in an inability to learn the boss' name).  This point is less relevant to the direct evidence issue and also informs the indirect evidence analysis discussed below.

Plaintiff next points to a number of May 2010 emails as purported direct evidence of

5

retaliation.  On May 18, 2010, Plaintiff sent Saunders an email in which she stated that an anti-kickback issue existed with Life Ambulance.  Someone, presumably a Holzer employee, highlighted that statement.  Plaintiff then sent a second email on May 19, 2010, in which she again stated that there was an anti-kickback violation and noted that such violations are illegal.  That statement was also highlighted by an unidentified Holzer employee.  Saunders forwarded this second email to his executive assistant.

On May 19, 2010, Lisa Halley, Defendant's Vice President of Human Resources, sent three emails to that same assistant.  (ECF Nos. 102-43, 102-44, 102-45.)  All three emails forwarded select emails that Plaintiff had sent to Halley; these forwarded emails address misunderstandings or disagreements between Plaintiff and Halley.  Plaintiff's argument is that because Halley sent these emails to Saunders within less than an hour of his reading Plaintiff's "anti-kickback emails" and because Halley cannot explain why she sent the emails, the timing of the forwarding activity points to retaliation.  Plaintiff's theory is that her having informed Saunders of the purported anti-kickback violation triggered him into amassing information to support the decision to terminate her.  The fact that this analytic chain necessitates one or more inferences unquestionably removes the May 2010 emails from the realm of direct evidence.

Plaintiff also points to an August 5, 2010 email that she argues is direct evidence that she was fired because of her efforts to stop the hot dog violation.  Apparently, Saunders dictated the August 5, 2010 email to his assistant, who sent the email under her own name to Halley.  The email reads:

> Mr. Saunders reviewed the e-mails from Sally on May 18 and 19.  After Sally sent the e-mails on the 18th (see attached) indicating that she was in the process of an investigation but stated that we definitely had an anti-kickback issue with Life Ambulance, he talked with her in his office and asked her not to reduce to writing

any charges before she had completed her investigation.

He indicated to her that he was not trying to hinder her investigation, but that she shouldn't make written allegations before she had all the facts and thoroughly analyzed the information.  She indicated that many states had already stopped any kind of gifts, even those with small monetary value, but admitted to him that was not the case in Ohio.

After this face to face conversation with her, she put out another email on the 19th again charging that there were definitely anti-kickback violations, even though she was still in the process of collecting information.

Mr. Saunders again met with her face to face and asked her to stop putting these charges in writing until she had completed her investigation.  He never at any time tried to impede her work.

(ECF No. 102-46.)  Similar to the first three categories of evidence that Plaintiff promotes as direct evidence, the August 5, 2010 email does not present any direct evidence of retaliatory intent.  At best, it requires multiple inferences to place it even arguably (if at all) into the category of indirect evidence of retaliation.

This leaves for discussion Plaintiff's fourth and last category of alleged direct evidence: a September 14, 2010 letter from Defendant's 2010 counsel to Plaintiff's counsel.  (ECF No. 102-47.)  The first line of the header of that letter reads "For Settlement Purpose Only" and the second line of the header reads "Communication Subject to Ohio and Federal Rules of Evidence 408." (*Id.* at 4935.)  Every page of the five-page letter includes this two-line header.  (*Id.* at 4935-39.)  Cherry-picking a portion of the letter, Plaintiff relies upon a select portion of the letter as direct evidence of retaliation.  Her counsel also used the letter during the deposition of Saunders, who agreed with its assertions.  Two comments are warranted.  First, the entire letter is confidential as part of settlement discussions, despite Plaintiff's attempt to carve out portions of the text as permissible here.  Second, the letter assertions with which Saunders agreed do not

constitute direct evidence of retaliation.  Similar to the preceding evidence, the assertions confirmed by Saunders in his deposition reflect only Saunder's knowledge of Plaintiff's investigative efforts and detail some consequent interaction between the two individuals. Because pulling from this any evidence of retaliation would require multiple inferences, Plaintiff has mischaracterized the evidentiary nature of the assertions, in addition to arguably misconstruing the content of the assertions.  This is not direct evidence of retaliation.

Where, as here, a plaintiff has failed to present direct evidence of retaliation, the Court must examine whether that plaintiff has presented indirect or circumstantial evidence in order to survive summary judgment.  In such instances, courts utilize the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 514 (6th Cir. 2003).  Under this approach, Plaintiff faces the initial burden of presenting her *prima facie* case.  *Id.* at 515.

The Court will assume for the sake of argument that the foregoing evidence reasonably raises an inference of retaliation so as to establish the requisite causation for Plaintiff's *prima facie* case for Count Three.  This is arguably a substantial leap, given Plaintiff's evidence of causation, but for purposes of shortening the analysis, the Court will assume the leap is correct and move on to the point that ultimately disposes of Plaintiff's third claim.

The assumed existence of the *prima facie* case means that the burden shifts to Defendant to present one or more legitimate, non-retaliatory reasons why Plaintiff suffered the adverse employment action she did.  *See Martin v. Gen. Elec. Co.*, 187 F. App'x 553, 559 (6th Cir. 2006); *Hagan v. Warner/Elecktra/Atlantic Corp.*, 92 F. App'x 264, 267 (6th Cir. 2004) (citing

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).  In accordance with this shifting of burdens, Defendant has pointed to an overarching, non-retaliatory reason for terminating Plaintiff's employment: she was not a good fit for the company because she was unprofessional and did not work well with others.

Defendant offers essentially eight specific reasons for Plaintiff's not being a "good fit." When asked during his deposition what problems or concerns he had with Plaintiff's job performance, Saunders provided the following reasons: (1) that Plaintiff had failed to provide Defendant with an original job application to replace a version she sent by facsimile;[1] (2) that she had failed to disclose that she had a brother who worked for Holzer; (3) that she demanded an office in a particular executive office suite, and was not diplomatic in dealing with Saunders on the issue by demanding that a new office be constructed for her or that another vice president be relocated so that Plaintiff could have that individual's office; (4) that she repeatedly called him "Brett" instead of "Brent"; (5) that he found it inappropriate that Plaintiff, as a compliance officer, actively sought to conceal that she now lived in Ohio so that she could continue serving on a committee as Virginia's representative; (6) that Plaintiff's communication skills were lacking as reflected in how rudely or poorly she treated others; (7) that Plaintiff had continued to introduce herself to the same employees day after day; and (8) that Plaintiff would send out

---

[1]  Evidence indicates that Plaintiff made various misstatements or omissions on her application.  Not all of these are relevant to the disposition of Count Three.  For example, Defendant cited as a reason for termination that Plaintiff failed to disclose that her brother worked at Holzer, which is relevant to Count Three.  Defendant did not offer as a reason for termination that Plaintiff also failed to indicate on her application that she had been fired from her prior job, which removes the omission from the Count Three analysis.  Where Defendant does not proffer a misstatement or omission as a specific ground for Plaintiff's discharge, this Court will not discuss the misstatement or omission.

emails indicating that an anti-kickback violation existed, but when he would meet with her, she would inform him that she could not actually say yet whether a violation existed.  (ECF No. 72-1, at Page ID # 2613-18.)  Saunders explained in regard to the last issue that although he told Plaintiff not to put a conclusion in writing until she had completed her investigation, she nonetheless sent another email stating that there was a violation the next day, despite having not completed her investigation and arrived at a conclusion.  (*Id.* at 2617-18.)  Saunders also testified as to his frustration with Plaintiff's inability to complete any investigations and arrive at any conclusions upon which Defendant could act if necessary.  (*Id.* at 2619-20.)  In his deposition testimony, he repeatedly described the foregoing issues as indicating that Plaintiff was not a good fit with Defendant.  Saunders testified that he therefore recommended to the Holzer Board that Plaintiff be terminated and that the Board agreed with his recommendation and authorized the discharge.

Because Defendant has met its burden of production, Plaintiff now has the burden to demonstrate that the reasons offered for her termination are pretextual.  *See Martin*, 187 F. App'x at 559; *Hagan*, 92 F. App'x at 267.  In order to prove that each of Defendant's proffered reasons are pretextual, Plaintiff must demonstrate that (1) the proffered reason had no basis in fact, (2) the proffered reason did not actually motivate the adverse employment decision, or (3) the proffered reason was insufficient to motivate the adverse employment action.  *Koval v. Dow Jones & Co.*, 86 F. App'x 61, 66 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  She "must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer*, 29 F.3d at 1083.  In other words, Plaintiff must offer evidence that "circumstantial evidence of [retaliation] makes it 'more

likely than not' that the employer's explanation is a pretext, or coverup." *Id.* at 1084.

The Sixth Circuit has explained more fully each of the three means for demonstrating pretext:

> A plaintiff can establish pretext "by proving '(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her discharge], or (3) that they were *insufficient* to motivate discharge.' " *Id.* at 285 (alteration in original) (quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)). "The first category implicates evidence 'that the proffered bases for the plaintiff's discharge never happened,' and the second category requires that the plaintiff 'admit[ ] the factual basis underlying the employer's proffered explanation and further admit [ ] that such conduct could motivate dismissal.' " *Chattman*, 686 F.3d at 349 (alteration in original) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). "The third category of pretext consists of evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Id.* (citing *Manzer*, 29 F.3d at 1084). "A showing of the third type of pretext is a direct attack on the credibility of the employer's proffered motivation for disciplining the plaintiff and, if shown, 'permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case.' " *Id.* (quoting *Manzer*, 29 F.3d at 1084). "In other words, it creates a genuine, triable issue of material fact." *Id.*

*Flones v. Beaumont Health System*, 567 F. App'x 399, 405-06 (6th Cir. 2014).  Applying these standards, the Court must conclude that Plaintiff has failed to meet her burden.

Plaintiff has failed to prove that the facts underlying Defendant's reasons never happened.  She has also failed to prove that Defendant's reasons did not actually motivate her termination.  Instead, Plaintiff argues that each of Defendant's eight reasons for why she was not a good fit for employment with Holzer were each insufficient.  But Plaintiff has failed to prove this contention, in addition to ignoring the cumulative effect of these issues.  Rather, Plaintiff argues that she was not given time to fix undesirable behavior or impressions and that she was not informed of all of the reasons Defendant offers.  Notably, Plaintiff has not directed this Court

11

to evidence that Defendant applied its policies (or did not apply them) to Plaintiff differently than it did to other comparable employees who engaged in substantially identical conduct.  This leaves the Court with a simple conclusion.  Stated most directly, Defendant asserts that it fired Plaintiff because she was a difficult flake, and Plaintiff has failed to point to evidence discrediting this rationale.

That last statement does not of course mean that Plaintiff is a difficult flake.  What matters here is whether Defendant believed that to be the case, however.  The Court reaches such a conclusion in part as a result of the honest belief rule.  The court of appeals has explained the essential inquiry related to this rule:

> In deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action.

> If there is no material dispute that the employer made a "reasonably informed and considered decision" that demonstrates an "honest belief" in the proffered reason for the adverse employment action, the case should be dismissed since no reasonable juror could find that the employer's adverse employment action was pretextual.

*Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (internal citation omitted; quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).  Thus, it is well settled that to puncture a legitimate reason for termination of employment and establish pretext, a "plaintiff must allege more than a dispute over the facts upon which [her] discharge was based.  [She] must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  *Braithwaite*, 258 F.3d at 493-94 (citing *Smith*, 155 F.3d at 806-07).

The issues and evidence summarized above supports that Saunders (and by consequence,

the Holzer Board) honestly held the belief that Plaintiff had engaged in unprofessional and problematic behavior.  It is well settled that the fact that an employment decision is based on subjective criteria is not itself evidence of pretext.  *Chattams v. Donahoe*, No. 3:09-cv-187, 2011 WL 5167165, at *8-9 (S.D. Ohio Oct. 31, 2011); *see also Russell v. Lew*, 549 F. App'x 389, 395 (6th Cir. 2013) (recognizing that the fact that reviews "involved a subjective component is not sufficient evidence of pretext").  It is simply a factor to be considered in conjunction with other evidence of pretext.

Also important here is that, in deciding whether an employer reasonably relied on the particularized facts before it, "it is inappropriate for the judiciary to substitute its judgment for that of management."  *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000).  The principal function of the Court is not to second-guess the business judgment of an employer, but rather to determine "whether the employer gave an honest explanation of its behavior."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004).  Therefore, the focus is not on whether the decisional process used by an employer was optimal or left no stone unturned; it is on "whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  *Smith*, 155 F.3d at 807.  The decision maker here did, with Saunders relying on his personal interactions with Plaintiff and with information presented to him.

Plaintiff may be able to explain away select issues.  For example, she may indeed have been confused about which application she needed to provide to Plaintiff.  And Plaintiff may have failed to disclose her brother's employment only because they are estranged and she was unaware of where he worked.  Plaintiff may have even been misunderstood in each of the

13

"difficult" interactions she had with various employees, and she might have misunderstood the directions that she complete investigations before announcing final results.  But the point is not whether each incident underlying Defendant's reasons represents an actual shortcoming by Plaintiff, but whether Defendant honestly believed it to be so.  Given the record before this Court, a reasonable juror could only conclude that Defendant made a reasonably informed and considered decision that demonstrates an honest belief in the proffered reasons underlying the ultimate proffered reason for Plaintiff's discharge.  No reasonable juror could find pretext.

The Sixth Circuit has explained that, " '[a]t the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.  If so, her prima facie case is sufficient to support an inference of discrimination at trial.' "  *Montell v. Diversified Clinical Services, Inc.*, 757 F.3d 497, 508-09 (6th Cir. 2014) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)). Because Plaintiff has failed to produce such evidence here, Defendant is entitled to summary judgment on Count Three.

## 2. State Law Claims

In addition to her sole federal claim discussed above, Plaintiff also asserts five state law claims: breach of contract (Count One), "bad faith breach of contract"(Count Two), fraudulent inducement (Count Four)*,* wrongful discharge in violation of public policy (Count Five), and promissory estoppel (Count Six).  In light of the failure of Plaintiff's Count Three federal claim, this Court presumptively should not address these state law claims.  *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a

plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))).  Plaintiff has failed to assert any justification or alternative basis for exercising jurisdiction over her remaining claims should the Court grant summary judgment against her on the federal claim. Therefore, while expressing no opinion on the merits of the state law claims, the Court dismisses these claims without prejudice.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### 3.  Affirmative Defenses

The failure of Plaintiff's federal claim on the merits and the dismissal without prejudice of her state law claims renders moot Plaintiff's motion for partial summary judgment.  In that motion, Plaintiff seeks summary judgment on Defendant's defenses of failure to pursue administrative remedies, unclean hands, failure to mitigate damages, after-acquired evidence, and statute of limitations.  Defendant opposes summary judgment on each defense except for the failure to pursue administrative remedies defense, which Defendant states that it has withdrawn. Because none of the remaining defenses inform the disposition of the federal claim upon which Defendant has obtained summary judgment above and instead relate to the unaddressed state law claims, the Court declines to address the remaining components of Plaintiff's motion.  (ECF No. 84.)  Moreover, to the extent that Defendant curiously attempts to convert its memorandum in

opposition into another motion for summary judgment, the Court declines to accept the brief as

such a motion.  *See, e.g.*, ECF No. 96, at page ID # 4424 (requesting summary judgment in

Defendant's favor on statute of limitations grounds).

### III.  Conclusion

For the foregoing reasons, this Court **GRANTS** Defendant's motion for summary

judgment on Count Three (ECF No. 73) and **DENIES** Plaintiff's motion for partial summary

judgment (ECF No. 84).  The Court declines to exercise supplemental jurisdiction over

Plaintiff's state law claims, which the Court **DISMISSES WITHOUT PREJUDICE**.  The

Clerk shall enter judgment accordingly and terminate this case on the docket records of the

United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

16